IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PHILIP  TUCKER  and  TONI  HOTTEN,
husband and wife,

                      Plaintiffs,

      v.

CASCADE  GENERAL,  INC.,  an  Oregon
corporation,  and  UNITED  STATES  OF
AMERICA,

                   Defendants.

Civ. No. 09-1491-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge:

*Introduction*

    In this personal injury case arising from an injury which occurred on a United States vessel,

the parties dispute whether trial may be to a jury or must be to the court.  Plaintiffs Philip Tucker

("Tucker") and Toni Hotten ("Hotten") (collectively "Plaintiffs") sue for negligence and loss of

OPINION AND ORDER                1                      {NMS}

consortium against Defendant Cascade General, Inc. ("Cascade General"), and the United States Army Corps of Engineers ("the United States"). Plaintiffs contend they are entitled to a jury trial of their claims against Cascade General, and they request the court use an advisory jury on their claims against the United States. Cascade General requests an advisory jury on its cross-claims for indemnity and contribution against the United States, and a jury trial on the United States' cross-claims against it for breach of contract, indemnity, and contribution.

The court grants Plaintiffs' motion for jury trial against Cascade General because Plaintiffs assert diversity jurisdiction against Cascade General for their claims, and they assert the separate jurisdictional basis of admiralty against the United States. Pursuant to Federal Rule of Civil Procedure 39(c), the court also concludes that an advisory jury is appropriate on Plaintiffs' claims against the United States and on the cross-claims between Cascade General and the United States, because their potential liability for Plaintiffs' damages, if any, stems from a single fact pattern.

*Background*

The United States is the owner of a public vessel, a dredge, called ESSAYONS ("the vessel"). (Opposition Memorandum of Defendant and Cross-Claimant United States of America on the Jury Issues ("United States' Opposition") 2.) Cascade General contracted with the United States to provide repairs to the vessel in 2008. *Id.* On September 26, 2008, Tucker, an employee of West Coast Marine Cleaning, was working in the engine room cleaning bilges aboard the vessel when a Cascade General employee removed a hatch cover from the deck above the engine room and lost control of the hatch, causing the hatch to drop thirty to thirty-five feet onto Tucker's head and back. (Third Amended Complaint ("Third Am. Compl.") ¶ 9.) At the time of the accident,

the vessel was located in navigable waters at the Port of Portland repair yard in Portland, Oregon. (United States' Opposition 2.)

A summary of the jurisdictional allegations contained in Plaintiffs' Third Amended Complaint (Docket No. 39) is important to understanding the resolution of the jury trial question presented here. The Third Amended Complaint's caption states the lawsuit is "*in personam* for damages for negligence," and contains a demand for jury trial, as required by Local Rule 38-1 and pursuant to Federal Rule of Civil Procedure 38(b). Plaintiffs allege their negligence claim against Cascade General is a "maritime claim pursuant to 28 U.S.C. §§ 1331 [federal question] and 1332 [diversity]" and that their "claim is not subject to Rule 9(h), FRCP [pleading special matters – admiralty or maritime claim]." (Third Am. Compl. ¶ 2.) Plaintiffs support diversity jurisdiction by alleging they are residents of Washington State and Cascade General is an Oregon corporation doing business in Oregon. (Third Am. Compl. ¶¶ 1, 3.) Plaintiffs also allege an amount-in-controversy in excess of $75,000. (Third Am. Compl. ¶¶ 11, 12, 21.) Against the United States, Plaintiffs allege jurisdiction for their negligence claim "pursuant to 28 USC §§ 1331 [federal question], 1333 [admiralty and maritime] and 1346(b)(1)[claims against the United States]. (Third Am. Compl. ¶ 16.) Further, Plaintiffs allege the United States "has waived its immunity under the Public Vessels Act, 46 USC § 31101 *et seq*." (*Id*.)

Cascade General cross-claims against the United States for contribution and indemnity, and asserts jurisdiction for its cross-claim based on the PVA. (Cascade General's Answer, Affirmative Defenses and Cross-Claim to Third Amended Complaint ("Cascade General's Answer") ¶ 7.) The United States cross-claims against Cascade General for breach of contract, contribution, and

indemnity. (Answer of United States to the Third Amended Complaint, and Cross-Claims ("United States' Answer") ¶¶ 43-49.) The United States asserts that "[t]hese cross-claims present cases of admiralty and maritime jurisdiction, as hereinafter more fully appears, and within Rule 9(h) of the Federal Rules of Civil Procedure." (United States' Answer ¶ 34.)

*Legal Standard*

Congress has statutorily implemented the federal courts' subject matter jurisdiction under Article III of the United States Constitution by categorizing: (1) all cases arising under the Constitution, laws, or treaties of the United States, under 28 U.S.C. § 1331; (2) cases involving citizens of diverse states under 28 U.S.C. § 1332; and (3) cases of admiralty law under 28 U.S.C. § 1333. Section 1331 provides for federal question jurisdiction, and "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Federal question jurisdiction, however, does not include controversies in admiralty. *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 368-69 (1959). Diversity jurisdiction is governed by section 1332(a), which authorizes district courts to exercise original jurisdiction over such actions only when the amount in controversy exceeds $75,000, exclusive of interest and costs, and all the plaintiffs are citizens of different states from all the defendants. 28 U.S.C. § 1332(a). *See In re Digimarc Corp. Derivative Litigation*, 549 F.3d 1223, 1234 (9th Cir. 2008) (existence of diversity jurisdiction "requires complete diversity between the parties -- each defendant must be a citizen of a different state from each plaintiff."). Admiralty jurisdiction is governed by 28 U.S.C. § 1333(1), which states:

"The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." The "savings to suitors" language permits a plaintiff to bring actions outside of admiralty jurisdiction when diversity jurisdiction exists, which will preserve a plaintiff's right to jury trial. *Ghotra v. Bandila Shipping, Inc.*, 113 F.3d 1050, 1054 (9th Cir. 1997).

Federal Rule of Civil Procedure 9 specifically contemplates that claims in a single case may invoke subject matter jurisdiction on both admiralty and non-admiralty grounds. In those instances, plaintiffs may choose between admiralty or an alternate basis of federal subject matter jurisdiction, unless the claim may be brought only in admiralty:

> [i]f a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e), and 82 . . . . A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated.

FED. R. CIV. P. 9(h). Thus, Rule 9(h) designation becomes necessary only when a claim for relief arises under both admiralty jurisdiction and another basis of subject matter jurisdiction, and the affirmative designation of a claim as subject to Rule 9(h) merely denotes the plaintiff's desire to proceed under admiralty procedures. *Lewis v. U.S.*, 812 F. Supp. 620, 627 (E.D. Va. 1993). Although Rule 9(h) permits actions with multiple bases of jurisdiction to be brought together, the Rules do not otherwise create a right to jury trial of a claim exclusively within the court's admiralty jurisdiction. FED. R. CIV. P. 38(e) ("[Rule 38(a)-(d) do] not create a right to a jury trial on issues in a claim that is an admiralty or maritime claim under Rule 9(h).").

A party's right to a jury trial under the Seventh Amendment will depend largely on the

jurisdictional basis asserted in its pleading, *Ghotra*, 113 F.3d at 1054, and invocation of admiralty jurisdiction has traditionally resulted in trials without juries. *Green v. Ross*, 481 F.2d 102, 103-04 (5th Cir. 1973). However, nothing in the Constitution or the Federal Rules of Civil Procedure explicitly forbids the use of jury trials in admiralty cases. *Fitzgerald v. U.S. Lines Co.*, 374 U.S. 16, 20 (1963). And, when a lawsuit arising out of a single incident is cognizable under admiralty jurisdiction and some other basis of subject matter jurisdiction, the plaintiff may invoke either basis of jurisdiction. *Zrncevich v. Blue Haw. Enters., Inc.*, 738 F. Supp. 350, 356 (D. Haw. 1990) (holding that the plaintiff was entitled to trial by jury pursuant to a statute even though the plaintiff also brought a claim in admiralty jurisdiction); 2 JAMES WM. ET AL., MOORE'S FEDERAL PRACTICE § 9.09[1] (3d ed. 1997).

The 1938 adoption of the Rules, specifically Rules 1 and 2, united actions of law and equity so that they may be tried together. 8 MOORE'S FEDERAL PRACTICE § 38.03[3](a)(i). In 1966, admiralty procedures were merged with actions of law and equity; thus, the federal rules permit joinder of legal, equitable, and maritime claims in one action. *Id.* Although legal, equitable, and maritime claims may be merged into a single action, the Rules require courts to distinguish the type of action as it relates to jury trial and non-jury trial. *Id.* at § 38.03[3](a)(ii). The right to jury trial, as it relates to Rules 38 and 39, is a right that attaches to issues rather than to actions:

> "[W]here equitable and legal claims are joined in the same action, there is a right to jury trial on the legal claims which must not be infringed either by trying the legal issues as incidental to the equitable ones or by a court trial of a common issue existing between the claims. The Seventh Amendment question depends on the nature of the issue to be tried rather than the character of the overall action."

*Ross v. Bernhard*, 396 U.S. 531, 537-38 (1970). The right to trial by jury is carefully preserved when

a party's legal rights are invoked. *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 565 (1990).

*Discussion*

I.    Subject Matter Jurisdiction

The court must determine the proper jurisdictional basis upon which Plaintiffs' claims against each defendant are based before the jury trial question can be resolved.

A.    *The United States*

Plaintiffs argue that subject matter jurisdiction over the United States for their claims exists under federal question, admiralty, FTCA, and the PVA. Easily dispensed with is the FTCA jurisdiction allegation. The FTCA waives the United States' immunity for torts, but it does not apply to any claim for which a remedy is provided under the PVA. *See* 28 U.S.C. § 2680(d) (excluding the FTCA as a remedy when a claim can be brought under the PVA); *Taghadomi v. United States*, 401 F.3d 1080, 1083 (9th Cir. 2005) (noting the FTCA's exception and concluding "[t]he PVA renders the United States liable in admiralty for "damages caused by a public vessel of the United States.").

Next disposed of is Plaintiffs' federal question allegation. The Third Amended Complaint contains no reference to the source for this jurisdiction beyond the PVA, a federal statute. Although the PVA is one of the "laws" of the United States[1], it does not invoke federal question jurisdiction under § 1331 because the PVA grants authority to courts to hear civil suits in personam against the United States *in admiralty* in cases involving "a public vessel of the United States." 46 U.S.C. §§

---

[1] Congress has provided that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331.

31101-13 (emphasis added). The PVA authorizes suits "on the admiralty side of the district courts" and provide the exclusive remedy for claims within their coverage. *U.S. v. United Continental Tuna Corp.*, 425 U.S. 164, 172 (1976). Here, the United States has admitted that it owns the vessel and the vessel is public, and the parties do not otherwise dispute that Tucker's injuries and events alleged to have caused them constitute a maritime tort within the meaning of the term.[2] Thus, Plaintiffs' in personam claim against the United States proceeds under the PVA, which consequently excludes federal question jurisdiction.

The two remaining jurisdictional allegations, the PVA and admiralty, are effectively the same. The PVA, as previously discussed, creates admiralty jurisdiction for maritime claims. Thus, the jurisdictional basis for Plaintiffs' claims against the United States is in admiralty.

B.    *Cascade General*

Plaintiffs assert federal question and diversity jurisdiction for their claims against Cascade General. A basis for federal question jurisdiction for Plaintiffs' claims against Cascade General is lacking, however, as Plaintiffs site no federal law in their Third Amended Complaint to support this jurisdictional allegation. Plaintiffs argue in their briefing on the jury trial issue that the Longshoremen and Harbor Workers Compensation Act ("LHWCA") serves as a basis for their negligence claims against Cascade General. The LHWCA does not appear in the Third Amended

---

[2] A maritime tort is one which occurs on or over navigable waters (known as the "locality" or "situs" test), and bear a "significant relationship to traditional maritime activity" (known as the "nexus" or "relationship" test). *Taghadomi*, 401 F.3d at 1084. *See also Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock, Co.*, 513 U.S. 527, 534 (1995)("[A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity.").

Complaint, but even if Plaintiffs had pleaded it, the LHWCA does not invoke federal question jurisdiction here because Tucker's negligence claim is a maritime tort. "A maritime negligence claim does not lose its maritime status and become a claim arising under federal nonmaritime law simply because it is covered by section 905(b) [of the LHWCA]." *Dozier v. Rowan Drilling Co., Inc.*, 397 F. Supp. 2d 837, 851-52 (S.D. Tex. 2005). For these reasons, the LHWCA does not support jurisdiction for Plaintiff's claims against Cascade General.

Plaintiffs' allegation of diversity jurisdiction fares better. Those allegations meet the requirements for diversity jurisdiction: Plaintiffs are residents of Washington State and Cascade General is an Oregon corporation, and Plaintiffs seek more than $75,000 in damages. Thus, Plaintiffs have established jurisdiction based on diversity for their claims against Cascade General.

II.    Plaintiffs' Right To Jury Trial Based On Diversity Jurisdiction

Having identified the proper jurisdictional bases for Plaintiffs' claims against Cascade General and the United States, the court turns to the question of whether Plaintiffs are entitled to a jury trial against Cascade General.

Plaintiffs seek a jury trial of their claims against Cascade General; they concede they are not entitled to have a jury decide their claims against the United States. (Plaintiffs' Memo in Support of Jury Trial ("Pls.' Memo") 2.) However, the United States argues that Plaintiff may not have a jury trial against Cascade General in this case, and it challenges Plaintiffs' reliance on diversity jurisdiction as a basis for their jury trial request. The United States argues that Plaintiffs might be able to establish their right to jury trial against Cascade General "but for one critical and defeating fact: they chose to bring the United States of America into this suit as a defendant . . . and its

presence destroys diversity." (United States' Opposition 6.) Thus, the United States contends, Plaintiffs may not have a jury trial against Cascade General because the United States also is a defendant here.

The United States' position implicitly presumes that whenever it is present as one of multiple defendants in a lawsuit, diversity jurisdiction may never be the basis of subject matter jurisdiction for a plaintiff's claims. The United States cites five cases to support its position, but those cases do not address the precise question at issue here, the availability of a jury trial against a co-defendant when the United States also is a defendant and the plaintiff has asserted separate subject matter jurisdiction grounds against each defendant.

In *Sharr v. Department of Transportation*, 247 F. Supp. 2d 1208 (D. Or. 2003), six plaintiffs sought injunctive relief and money damages against the TSA and a government contractor for discrimination in the application and hiring process for security screener positions. Plaintiffs asserted claims under Title VII, the Age Discrimination in Employment Act ("ADEA"), and two federal regulations, against both the TSA and the contractor, and a state law claim against the contractor only. *Sharr*, 247 F. Supp. 2d at 1209. The court first found plaintiffs' Title VII and ADEA claims "not properly before the court" because plaintiffs had failed to satisfy the administrative prerequisites to these claims. *Id.* The court thus denied plaintiffs' preliminary injunction on their federal claims. *Id.* The court then phrased the issue as "whether plaintiffs' state law employment discrimination claim against [the contractor] supports the requested preliminary injunction." *Id.* at 1212. The court found that it did not and denied plaintiffs' motion for preliminary injunction against the contractor. *Id.* After ruling on the injunctive relief issues presented by the

plaintiffs' motion, the court in dicta noted its "concern" that "in the absence of any viable federal claim" it might lack subject matter jurisdiction. *Id.* at 1214. The court then noted that a federal agency is not a "citizen" of any state and its presence as a defendant destroys diversity," and that plaintiffs, having abandoned their attempt to certify their case as a class action, could not meet the "amount in controversy" requirement. *Id.*

In *Dyack v. Commonwealth of Northern Mariana Islands,* 317 F.3d 1030 (9th Cir. 2003), the plaintiff, a citizen of Canada, sued the Commonwealth of Northern Mariana Islands ("Commonwealth") under 42 U.S.C. § 1983 for violating his due process rights when it fired him from his physician position with the health department, and under state law for wrongful termination and premium pay violations. The district court granted summary judgment against Dyack on his federal claim and declined to exercise supplemental jurisdiction over his state-law claims. 317 F.3d at 1033. The Ninth Circuit first affirmed the district court's summary judgment on Dyack's federal claim, finding that he had no constitutionally protected interest in his position and, thus, was not entitled to due process. *Id.* at 1033-37. The Ninth Circuit next rejected Dyack's argument that the district court had diversity jurisdiction over his state-law claims and erred in not exercising its supplemental jurisdiction to retain those claims. The court of appeals observed that the Commonwealth is a United States territory and therefore considered a "state" for jurisdictional purposes, and "[t]here is no question that a State is not a 'citizen' for the purposes of diversity jurisdiction." *Id.* at 1037 (quoting *Moor v. County of Alameda,* 411 U.S. 693, 717 (1973)). The Ninth Circuit concluded: "In light of the district court's grant of summary judgment to defendants on Dyack's only federal claim, the court did not abuse its discretion in dismissing the state-law

claims." *Id*. at 1037-38.

These cases and the others the United States cites to support its diversity jurisdiction argument are inapposite to the circumstances of this case. Both *Sharr* and *Dyack* involved state-law claims against the United States which those plaintiffs asserted in diversity jurisdiction.[3]  Here, Plaintiffs assert independent bases of jurisdiction against each defendant: they rely on the PVA and admiralty for their claim against the United States, and diversity jurisdiction for their claim against Cascade General.  The United States has not produced, and the court has not found, case authority in the Ninth Circuit or elsewhere that holds a plaintiff may not sue a defendant in diversity when the United States is a co-defendant in the case and the plaintiff has asserted a separate jurisdictional ground against the United States.

In fact, contrary to the United States' assertion that its presence destroys diversity jurisdiction, courts have permitted plaintiffs to proceed in diversity where the United States is a party so long as an alternative federal jurisdictional basis exists upon which to base jurisdiction against the United States.  In *Pacific Mutual Life Insurance v. American National Bank*, 642 F. Supp. 163, 164 (N.D. Ill. 1986), the plaintiffs brought a mortgage foreclosure proceeding in diversity and later amended the complaint to add the United States as a defendant based on federal question jurisdiction.  *Id.*  The defendants challenged the court's subject matter jurisdiction relying upon the

---

[3] The United States' remaining cases are similarly inapposite. *See Brumfield v. Nat'l Flood Ins. Program*, 492 F. Supp. 1043, 1044 (D.C. La. 1980) (United States the sole defendant); *McGlynn v. Emps. Commercial Union*, 386 F. Supp. 774, 776 (D. P.R. 1974) (court concluded diversity jurisdiction did not exist because United States was sole defendant and plaintiff's complaint lacked allegation of diversity altogether); *Darling v. United States*, 352 F. Supp. 565, 567 (E.D. Cal 1972) (same).

same argument the United States makes here, that the United States can never be sued in a diversity action because its presence destroys complete diversity. *Id.* at 165. In rejecting this argument, the court held that "[s]o long as each of these 'claims' has an independent basis of jurisdiction, they all may properly be joined in one lawsuit under the Federal Rules." *Id.* at 167. The court noted that "we have complete diversity with respect to each independent claim against the individual defendants; and we have federal question jurisdiction over the separate claim against the United States." *Id.* The court viewed the plaintiffs' suit as consisting of "separate but related claims against different parties joined in one suit" where each claim "rest[ed] on independent jurisdictional bases." *Id.* The court held that "[t]he presence of the United States in its 'claim' does not dissolve diversity over the other 'claims.'" *Id.*[4]

The Seventh Circuit reached the same conclusion when it held that the complete diversity rule "does not require dismissal of claims against nondiverse defendants if plaintiff has an independent basis of jurisdiction over them." *Kauth v. Hartford Ins. Co. of Ill.*, 852 F.2d 951, 958 (7th Cir. 1988). The *Kauth* court echoed the common sense principle in *Pacific Mutual* that plaintiffs should not be required to bring separate claims in separate lawsuits against defendants where the claims arise out of the same facts and have independent federal jurisdictional bases. *Id.* at 959.

The reasoning of these cases is persuasive. Further, it is consistent with Supreme Court precedent on exceptions to complete diversity. In *Romero v. Int'l Terminal Operating Co.*, 358 U.S.

---

[4] This reasoning is consistent with Federal Rule of Civil Procedure 8(a)(1)'s requirement that a "*claim for relief* must contain . . . a short and plain statement of the grounds for the court's jurisdiction[.]" (Emphasis added.)

354 (1959), plaintiff, a Spanish national, sued two New York corporations, one Delaware corporation, and one Spanish corporation. The Supreme Court found that diversity jurisdiction existed. Although the plaintiff and one corporate defendant were both foreign nationals of Spain, the Supreme Court held that the complete diversity rule did not result in a lack of subject matter jurisdiction. 358 U.S. at 381. The Court found that the presence of an independent federal jurisdictional basis existed between the Spanish plaintiff and the Spanish corporate defendant; thus, the presence of a Spanish corporate defendant did not destroy diversity jurisdiction between the plaintiff and the three diverse defendants. *Id.*

Here, diversity jurisdiction has not been destroyed simply by the United States' presence. The court has jurisdiction over Plaintiffs' claims against Cascade General in diversity and over Plaintiffs' claims against the United States in admiralty, and the United States' presence does not nullify those separate jurisdictional bases. In *Fitzgerald v. U.S. Lines Co.*, 374 U.S. 16 (1963), the Supreme Court permitted a plaintiff's request for trial by jury where a single set of facts gave rise to an admiralty claim and a non-admiralty claim with a statutory right to a jury trial. *Fitzgerald*, 374 U.S. at 20-21. The Ninth Circuit relied on *Fitzgerald*, in part, when it evaluated whether a jury trial may be permitted in a case involving both admiralty and non-admiralty jurisdiction. And, in *Ghotra by Ghotra v. Bandila Shipping, Inc.*, 113 F.3d 1050 (9th Cir. 1997), the plaintiffs filed a complaint alleging claims based on jurisdiction in admiralty and diversity. *Id.* at 1054. The plaintiffs specifically stated that several claims were based on diversity and made jury trial demands on the diversity claims. *Id.* The Ninth Circuit concluded that the presence of diversity jurisdiction entitled the plaintiffs to a jury trial on those claims. The court explained that, because the plaintiffs could

have brought two separate actions, one based on diversity and one based on admiralty, which could have been consolidated into one action under Rule 42(a), the court should not "penalize" the plaintiffs by denying their right to trial by jury. *Id.* at 1057.

The United States argues that Plaintiffs cannot convert their maritime claim against Cascade General into an ordinary negligence claim to support their jury trial request, but that argument ignores Rule 9(h) and the case law construing it. Rule 9(h)(1), entitled "Admiralty or Maritime Claim – How Designated," provides:

> If a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e), and 82 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated.

In *Trentacosta v. Frontier Pacific Aircraft Industries*, 813 F.2d 1553, 1559 (9th Cir. 1987), the Ninth Circuit squarely addressed a plaintiff's option to plead a non-admiralty basis of jurisdiction where an admiralty basis of jurisdiction exists. *Id.* The Ninth Circuit held that the plaintiff's claims were not cognizable solely in admiralty jurisdiction, and the plaintiff's invocation of non-admiralty jurisdiction over its claims precluded the district court from treating the plaintiff's claims as admiralty claims under Rule 9(h). *Id.*

Plaintiffs are entitled to a jury trial on their claims against Cascade General. Rule 9(h) exists in order to facilitate litigation that invokes both admiralty and non-admiralty jurisdictional bases. Plaintiffs showed a clear intent from the outset to proceed against Cascade General in diversity by specifically designating the claims against Cascade General as independent of Rule 9(h) procedures,

OPINION AND ORDER                     15                         {NMS}

and by requesting a jury trial in their complaints.  Further, Plaintiffs' complaint should proceed in

a single action as permitted under Federal Rules of Civil Procedure 1 and 2 because the Plaintiffs

have independent federal bases of jurisdiction over each defendant and their claims arise from the

same set of facts.

III.    Remaining Jury Trial Issues

The previous section demonstrates that Plaintiffs are entitled to a jury trial on their diversity-

based claims against Cascade General and that their claims against the United States will be tried

to the court.  All the jury trial issues are not resolved, however.  First, Plaintiffs seeks an advisory

jury on their claims against the United States, and Cascade General seeks an advisory jury on its

cross-claims against the United States.  (Cascade General's Jury Demand 1-2.)  Second, the court

must address the jury trial issue as it relates to the United States' cross-claims against Cascade

General.

A.    *Advisory Jury for Plaintiffs' Claims and Cascade General's Cross-Claims Against*
      *the United States*

Pursuant to Federal Rule of Civil Procedure 39, Plaintiffs and Cascade General ask the court

to exercise its discretion to empanel an advisory jury to consider Plaintiffs' claims against the United

States and Cascade General's cross-claims against the United States.  Rule 39© reads:

> [i]n an action not triable of right by a jury, the court, on motion or on its own:  (1)
> may try any issue with an advisory jury; or (2) may, with the parties' consent, try any
> issue by a jury whose verdict has the same effect as if a jury trial had been a matter
> of right, unless the action is against the United States and a federal statute provides
> for a nonjury trial.

FED. R. CIV. P. 39©.  Thus, for actions not triable of right by a jury, Rule 39 does not create a right

to an advisory jury but leaves such determination to the discretion of the trial judge.  *Poston v. U.S.*,

262 F. Supp. 22, 23-24 (D. Haw. 1966) (overruling defendant United States' objection to plaintiff's request for an advisory jury on issues of fact regarding the United States' liability, in action where jury was to be empaneled on liability issues of parties other than the United States). Rules 38 and 39 permit district courts to exercise discretion to utilize an advisory jury whose opinion is non-binding on the court.

In considering whether to exercise its discretion and empanel an advisory jury on the claims Plaintiffs allege against the United States, and Cascade General's cross-claims against the United States, respectively, the court must consider the character of the issue before it: "[w]hether the Seventh Amendment authorizes a jury trial in a particular case does not depend on the character of the overall action, but instead is determined by the nature of the issue to be tried." *Palmer v. United States,* 652 F.2d 893, 895 (9th Cir. 1981) (internal quotation marks and citations omitted), *overruled on other grounds, White v. McGinnis,* 903 F.2d 699 (9th Cir. 1990). "An issue is considered 'legal' when its resolution involves the ascertainment and determination of legal rights or justifies a remedy traditionally granted by common law courts." *Id.*  Common law courts traditionally granted a remedy of damages. *Id.* at 896.

Here, the claims Plaintiffs and Cascade General allege against the United States involve resolution of liability for Plaintiffs' injuries, which implicates legal rights traditionally heard by common law courts.  Neither Plaintiffs nor Cascade General are entitled to a jury trial by right on their claims against the United States; however, the Supreme Court has permitted joinder of admiralty claims and legal claims even when permitting such results in a jury trying all the claims. *Fitzgerald,* 374 U.S. at 21. In *Fitzgerald*, the Supreme Court reasoned that a jury is well-suited for

OPINION AND ORDER                            17                              {NMS}

determining the liability of multiple parties when injury arises from essentially one accident:

> Where, as here, a particular mode of trial being used by many judges is so cumbersome, confusing, and time consuming that it places completely unnecessary obstacles in the paths of litigants seeking justice in our courts, we should not and do not hesitate to take action to correct the situation. Only one trier of fact should be used for the trial of what is essentially one lawsuit to settle one claim split conceptually into separate parts because of historical developments.

*Id.*

The court concludes that there is benefit from an advisory jury in the claims Plaintiffs and Cascade General allege against the United States because Plaintiffs' injuries arose from one fact pattern where Cascade General, the United States, or both may be liable for Plaintiffs' damages, if any. Although the United States initiated its cross-claim against Cascade General in admiralty, the United States' desire to proceed in admiralty without a jury ought to give way to Plaintiffs' election to seek redress against both Defendants in one civil action when the Plaintiffs' injuries stem from one accident. Accordingly, Plaintiffs' and Cascade General's request for an advisory jury on their claims against the United States is granted.

B.      *Jury Trial of the United States' Cross-Claims Against Cascade General*

Both the United States and Cascade General agree that their respective cross-claims present cases of admiralty jurisdiction, which are actions not triable of right by jury under Rule 39©. (Cascade General's Answer ¶ 7 (acknowledging cross-claim jurisdiction pursuant to the PVA); United States' Answer ¶ 34.) Having granted Cascade General's request for an advisory jury on its cross-claims against the United States, the court now must address whether the United States' indemnity, contribution, and breach of contract cross-claims will be heard by the advisory jury the court will empanel. The Ninth Circuit has held that contracts for repair of a ship that is already

OPINION AND ORDER                      18                      {NMS}

constructed invoke admiralty jurisdiction. *See Point Adams Packing Co. v. Astoria Marine Const. Co.*, 594 F.2d 763, 765-66 (9th Cir. 1979) (distinguishing contracts for ship repair from contracts for ship building). Because the vessel was completed and in service well before the United States entered into contract with Cascade General for repair, the United States's cross-claims against Cascade General invoke admiralty jurisdiction. As the court explained earlier in discussing the legal standards that apply in this case, the invocation of admiralty jurisdiction has traditionally resulted in trials without juries, but nothing in the Constitution or Federal Rules forbids the use of jury trials in admiralty cases. *Fitzgerald*, 374 U.S. 16, 20 (1963).

Courts have permitted indemnity claims based on admiralty contracts to be tried to juries. *See Simko v. C & C Marine Maintenance, Co.*, 594 F.2d 960, 964-65 (3d Cir. 1979) (holding that an admiralty-based indemnity claim and civil suit for damages may be tried to a jury). In *Blake v. Farrell Lines, Incorporated*, 417 F.2d 264 (3d Cir. 1970), a plaintiff brought a negligence claim for personal injuries against the shipowners based on diversity jurisdiction, and the shipowners filed separate indemnity cross-claims against the plaintiff's employer in admiralty, requesting bench trials on these claims. *Id.* at 264-65. The indemnity claims were consolidated with the plaintiff's claim under Rule 42, and, against the shipowners' motion for bench trial, the district court ordered that "all factual issues [including the indemnity claims] . . . be tried to a jury." *See id.* at 265 (excluding from the jury only the issue of attorney fees in the indemnity claims). The Third Circuit affirmed the district court's exercise of discretion in permitting a jury trial on the admiralty indemnity claims, based largely on the Supreme Court's rationale in *Fitzgerald*. *Id.* at 266. "[T]he *Fitzgerald* case is important because of its implication that, if the circumstances justify such action, a district court

exercising section 1333 jurisdiction over a maritime claim may require that the issues of fact be tried to a jury." *Id.* The Third Circuit noted that *Fitzgerald* permitted an admiralty claim to be heard to a jury in 1963, a time when Admiralty Rule 46½ mandated that the admiralty court should serve as fact finder. *Id.* No such mandate exists after the 1966 merger of courts of admiralty with courts of law and equity, and Rules 38 and 39 currently regulate the availability of jury trials. *Id.* The court held that the district court decision to consolidate the admiralty indemnity claims and try them to a jury was within the judge's discretion under Rule 42 and did not contradict Rules 38 or 39 in any way. *Id.* The Third Circuit explained that consolidation "will save trial time and make for consistency and efficiency in the disposition of closely related disputes arising out of the same transaction or mishap." *Id.*

The Third Circuit's reasoning in *Blake* for permitting a jury trial in admiralty jurisdiction is persuasive when a dispute arises out of the same incident because it promotes judicial efficiency and is consistent with Rule 38 and 39, which permit courts to empanel advisory juries when there is no right to a jury trial. Here, the United States seeks resolution of its financial liability with Cascade General for Plaintiffs' injuries, which is a legal remedy traditionally granted by courts of law. The carefully preserved right to trial by jury should not be infringed when legal rights are at stake. *Chauffeurs, Teamsters & Helpers, Local 391 v. Terry*, 494 U.S. 558, 565 (1990). Further, resolution of liability for Plaintiffs' damages, if any, may depend on whether Cascade General breached the contract it entered with the United States, which will necessarily require resolution of factual findings on all of the other facts the empaneled jury and advisory jury will hear. Thus, the court finds that empaneling an advisory jury on the United States' cross-claims against Cascade General

is appropriate here, where the ultimate resolution of liability for an accident should be based on consistent findings of fact.

<em>Conclusion</em>

Plaintiffs' demand for a jury trial on its claims against Cascade General is GRANTED (#45). Plaintiffs' request for an advisory jury on its claims against the United States is GRANTED (#45). Cascade General's demand for an advisory jury on its claims against the United States is GRANTED (#51). The United States' claims against Cascade General will be tried to an advisory jury.

DATED this 24th day of October, 2011.

John V. Acosta
United States Magistrate Judge