IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

PHILIP TUCKER,

           Plaintiffs,

v.

CASCADE GENERAL, INC., an Oregon corporation, and UNITED STATES OF AMERICA,

           Defendant.

3:09-cv-1491-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge:

Philip Tucker ("Tucker") brought a negligence action against Cascade General, Inc. ("Cascade") and the United States to recover damages for personal injury to Tucker.[1] Tucker sustained permanent and life-altering injuries aboard the dredge ESSAYONS, a public vessel

---

[1] At one time, Tucker and his wife, Toni Hotten, were plaintiffs in this case. Hotten brought a claim for loss of consortium against Cascade General, Inc. ("Cascade"), and the United States. Hotten settled her claim with Cascade and dismissed her claim against the United States.

Page 1 - OPINION AND ORDER

owned by the United States, when a hatch cover from the upper pump room fell through the hatch opening and struck him in the head while he was working below in the lower pump room.

The United States and Cascade filed cross-claims against each other. Prior to trial, Tucker settled his claim against Cascade, and Cascade's cross-claims against the United States were dismissed, with prejudice. The court deferred ruling on the United States' contractual indemnification cross-claims against Cascade.

Following a nine-day court trial of Tucker's case against the United States, the court found the United States was 50% responsible for the harm to Tucker and, accordingly, obligated to pay that share of his resulting damages ($2,077,187 for economic damages; $8,000,000 for pain and suffering and loss of enjoyment).

Prior to an entry of Judgment[2] in this case, and pursuant to its deferred cross-claims against Cascade, the United States now seeks indemnification from Cascade, up to the limit of $300,000 per contract, for the total sum of $600,000, to reduce the amount the United States owes Tucker. Cascade's settlement with Tucker included a provision that Tucker would "accept the risk . . . [of] setoffs occasioned by the United States' cross-claims against Cascade []." (Def.'s Ex. 555.) The parties agree that pursuant to Tucker's Settlement Agreement with Cascade, the amount, if any, owed to the United States under Cascade's contractual indemnity provisions will directly reduce the amount of damages owed by the United States to Tucker set forth in this court's Findings of Fact and Conclusions of Law.

---

[2] Final Judgment has not yet been entered, pending resolution of the issue at hand.

Page 2 - OPINION AND ORDER

*Background*[3]

The Army Corps of Engineers ("Corps") and Cascade entered into two contracts, the Repower Contract and the Maintenance and Repair Contract ("M&R Contract"), for work on the ESSAYONS; both Contracts were in effect during the relevant time period. The Repower Contract generally involved replacing engines on the ESSAYONS. The M&R Contract was a five-year contract to perform annual maintenance on the dredge. The two Contracts were executed at separate times and covered different, but overlapping time periods. The M&R Contract was executed in June 2003, by the Corps' Portland Office for a base amount of $4,097,725. The Repower Contract was let by the Corps' Philadelphia Contracting Division in 2006, for a base amount of $11,633,778.

Both Contracts included an indemnity clause:

(c) 'Indemnification.' The Contractor indemnifies the Government and the vessel and its owners against all claims, demands, or causes of actions to which the Government, the vessel or its owner(s) might be subject as a result of damage or injury (including death) to the property or person of anyone other than the Government or its employees, or the vessel or its owner, arising in whole or in part from the negligence or other wrongful act of the Contractor or its agents or employees, or any subcontractor, or its agents or employees.

(1) The Contractor's obligation to indemnify under this paragraph shall not exceed the sum of $300,000 as a consequence of any single occurrence with respect to any one vessel.

---

[3]The *Background* section summarizes only the facts relevant to the indemnification issue. The parties and the court are familiar with the extensive factual and procedural history of this case; it has been recounted many times previously and will not be restated here. Additionally, with the exception of the United States' Trial Exhibit 555, all referenced exhibits were previously admitted by the court. The United States' Trial Exhibit 555 is admitted for the limited purpose of indemnification. Finally, while the parties vigorously dispute the legal issues with regard to the indemnification question, they do not dispute the facts relevant to indemnification.

Page 3 - OPINION AND ORDER

> (2) The indemnity includes, without limitation, suits, actions, claims, costs, or demands of any kind, resulting from death, personal injury, or property damage occurring during the period of performance of work on the vessel or within 90 days after redelivery of the vessel. For any claim, etc., made after 90 days, the rights of the parties shall be as determined by other provisions of this agreement and by law. The indemnity does apply to death occurring after 90 days where the injury was received during the period covered by the indemnity.

(Def.'s Trial Ex. 507 at 104-06; Trial Ex. 508 at US01375-77.).) At the time of the accident, Tucker was working on the ESSAYONS under the M&R Contract. Josh Economides was aboard the ship pursuant to the Repower Contract.

*Discussion*

The United States contends Cascade's contractual indemnity obligation to the United States totals $600,000, *i.e.*, $300,000 under each of the two Contracts. As such, Tucker's Judgment against the United States must be reduced by $600,000. According to the United States, the indemnification provisions in the contracts between the United States and Cascade are clear, complete, and unambiguous on their face. Conversely, Tucker argues the indemnification provisions do not require Cascade to indemnify the United States for claims arising from the United States' own negligence. Alternatively, if the United States is entitled to indemnification under one of the Contracts, its recovery is limited to $300,000 for a single occurrence on the ESSAYONS.

The parties agree the indemnification decision in this case is controlled by the Supreme Court's ruling in *United States v. Seckinger*, 397. U.S. 203 (1970). In *Seckinger*, the Supreme Court considered an indemnification claim by the United States against a contractor. In that case, the United States brought suit against the contractor for indemnity after the injured party received

Page 4 - OPINION AND ORDER

a judgment against the United States. *Id.* at 204-06. The indemnification clause at issue in *Seckinger* provided:

> 11. PERMITS AND RESPONSIBILITY FOR WORK, ETC. The Contractor shall, without additional expense to the Government, obtain all licenses and permits required for the prosecution of the work. He shall be responsible for all damages to persons or property that occur as a result of his fault or negligence in connection with the prosecution of the work. He shall also be responsible for all materials delivered and work performed until completion and final acceptance, except for any completed unit thereof which theretofore may have been finally accepted.

*Id.* at 884 n.9. The Court determined this provision did not include indemnification for the United States' own negligence. "In short, if the United States expects to shift the ultimate responsibility for its negligence to its various contractors, the mutual intention of the parties to this effect should appear with clarity from the face of the contract." *Id.* at 885. Under that standard, the contract provision in *Seckinger* did not encompass indemnification for the United States' negligence. *Id.* at 885-86.

Although the Court cited a clause recommended by the American Institute of Architects ("AIA") as an example of a valid indemnity provision, it explicitly stated the example was used for illustrative purposes only and was not an attempt to identify the specific language required to shift ultimate liability to the indemnitor. *Id.* at 213 n.17. The Court declined to hold that a provision "intended to encompass indemnification for the indemnitee's negligence must include an 'indemnify and hold harmless' clause or that it must explicitly state that indemnification extends to injuries occasioned by the indemnitee's negligence." *Id.* Instead, the Court emphasized that "[c]ontract interpretation is largely an individualized process, with the

Page 5 - OPINION AND ORDER

conclusion in a particular case turning on the particular language used against the background of other indicia of the parties' intention." *Id.*

Relying upon several Circuit Courts of Appeal cases that came after the decision in *Seckinger*,[4] the United States insists the indemnity clause in the Cascade Contracts is sufficient to encompass responsibility for the injuries to Tucker resulting from the United States' negligence here. First, the United States cites to a decision by the Fourth Circuit in *United States v. Hollis*, 424 F.2d 188 (4th Cir. 1970), and argues the indemnity clause in that case "is nearly identical" to the provision in the Cascade Contracts. The provision stated, in relevant part:

> The Contractor indemnifies and holds harmless the Government . . . against all suits . . . (including, without limitation, . . . personal injury . . .) to which the Government . . . may be subject or put by reason of damage or injury . . . to the property or person of anyone other than the Government, its agencies, instrumentalities and personnel . . . arising or resulting in whole or in part from the fault, negligence, wrongful act or wrongful omission of the Contractor, or any subcontractor, his or their servants, agents or employees; . . . . Such indemnity shall include, without limitation, suits, actions, claims, costs or demands of any kind whatsoever, resulting from . . . personal injury . . . occurring during the period of work on the vessel . . . .

*Id.* at 189. The court in *Hollis* determined while the contract provision "did not include a 'hold harmless' clause, the indemnity provision itself was clear and explicit and stated the contractor's obligation to indemnify the Government for any liability caused 'in whole or in part' by the

---

[4] The United States also cites to the Second Circuit's decision in *Shenker v. United States*, 322 F.2d 622 (2d Cir. 1963), the Third Circuit's decision in *Beloit Power Systems v. Hess Oil Virgin Islands*, 757 F.2d 1427 (3d Cir. 1985), and the Ninth Circuit's decision in *United States v. San Francisco Elevator Company*, 512 F.2d 23 (9th Cir. 1975). The decision in *Shenker* predates the Supreme Court's decision in *Seckinger* and the United States offers no explanation for its applicability here. The dispute in *Beloit* involved private parties and, again, there is no explanation or analysis by the United States for its relevance in this litigation. Finally, in *San Francisco Elevator*, the United States' right to indemnification against the contractor was not in dispute.

Page 6 - OPINION AND ORDER

contractor." *Id* at 191. The statement by the Fourth Circuit in *Hollis* that the provision did not include a hold harmless clause appears to be in error. Indeed, the first sentence of the cited clause states: "Contractor indemnifies and *holds harmless* the Government." *Id.* at 189 (emphasis added); *see also Pickett v. United States*, 724 F. Supp. 390, 394 n.2 (D.S.C. 1989) ("The opinion incorrectly states that the contract provision 'did not include a "hold harmless" clause.'"). Thus, the indemnification clause in the Cascade Contracts is distinguishable from the provision in *Hollis* based upon the hold harmless language. Moreover, the provision in *Hollis* also provided indemnity "without limitation" for claims "of any kind whatsoever, resulting from . . . personal injury . . . occurring during the period of work on the vessel." Such broad language is not present in the indemnification clause of the Cascade Contracts. *See Hollis*, 424 F.2d at 190 (provision is "admittedly broad").

Next, the United States cites the Second Circuit's decision in *Gibbs v. United States*, 599 F.2d 36 (2d Cir. 1979). In *Gibbs*, the court interpreted an indemnity clause that provided, in part:

> The contractor shall save harmless and indemnify the Postal Service . . . from all claims . . . resulting from any personal injury or property damage received or sustained by any person . . . attributable to any work performed under or related to this contract, regardless of whether such claims, loss, damage, actions, cause of actions, expense and/or liability may be attributable to the fault, failure or negligence of the contractor.

599 F.2d at 40. That court held this language clearly and unequivocally expressed the parties' intent to require the contractor to indemnify the Postal Service even where, as the court found in *Gibbs*, the contractor was not in any way negligent. The Second Circuit stated:

> First, the clause contains the terms, "save harmless and indemnify," which as Justice Brennan indicated, do help show an intent to encompass indemnification for the indemnitee's negligence. Second, the clause obligates the contractor to indemnify the government for "all claims . . . resulting from any personal injury

Page 7 - OPINION AND ORDER

> . . . growing out of . . . any work performed under or related to this contract . . . ," which on its face covers the plaintiff's claim here. There are no express exceptions to the broad language.

*Id.* Unlike the indemnification provision in the Cascade Contracts, the clause in *Gibbs* had both the express "save harmless" language and explicitly stated indemnification will be required for "any loss" sustained by "any person" and "regardless of whether" liability was attributable to the contractor.

The third case relied upon by the United States is the Seventh Circuit's decision in *Gillen Company v. United States*, 825 F.2d 1155 (7th Cir. 1987). In *Gillen*, the disputed contract stated:

> The Contractor indemnifies and holds harmless the Government . . . against all suits, actions, claims, . . . to which the Government . . . may be subject or put by reason of damage or injury . . . [to] any one other than the Government, . . . arising or resulting in whole or in part from the fault, negligence, wrongful act or wrongful omission of the Contractor . . . . Such indemnity shall include, without limitation, suits, actions, claims, costs or demands of any kind whatsoever, resulting from death, personal injury or property damage occurring during the period of performance of work on the vessel or within sixty (60) days after redelivery of the vessel . . . .

*Id.* at 1155-56. The court held the provision was unambiguous on its face. *Id.* at 1157. First, the clause clearly stated plaintiff agreed to indemnify and hold harmless defendant against all suits arising from the total or partial negligence of the contractor. Additionally, the contract also provided "the indemnity includes any loss without limitation of any kind whatsoever." *Id.* Because the provision explicitly applies to "all suits," it would inappropriate for the court to restrict that interpretation to "all suits, except those brought by the contractor." *Id.* Thus, the provision in *Gillen* included somewhat broader language than the clause presently before the court.

Page 8 - OPINION AND ORDER

Turning now to the indemnification clause in the Cascade Contracts, the relevant language states Cascade "indemnifies the Government . . . against all claims, demands, or causes of actions . . . arising in whole or in part from the negligence . . . of [Cascade] . . . ." Under the circumstances of this case, and the controlling precedent, the court finds the provision in the Cascade Contracts does not extend indemnification for the negligence of the United States. The court's finding is grounded in the reasons set forth below.

As the parties contend and the court agrees, the decision here is controlled by the Supreme Court's analysis and holding in *Seckinger*. Prior to undertaking the contract construction in that case, the Court noted "general principles that have evolved concerning the interpretation of contractual provisions." 397 U.S. at 884. The Court first relied upon the maxim that the contract should be construed most strongly against the drafter, which in both *Seckinger* and here is the United States. There are alternative interpretations for the indemnification clause at issue in this case. Indeed, the United States and Tucker each insist their respective interpretations of the indemnification provision are plausible based upon the express language of the clause, yet they reach opposing conclusions as to the meaning. *See, e.g., Conrad v. Ace Property & Casualty Insurance Company*, 532 F.3d 1000, 1005 (9th Cir. 2008) (clause is ambiguous if "on its face" it is susceptible to two or more interpretations, both of which are reasonable.)[5] Thus, any ambiguity here will be resolved in favor of Tucker.

---

[5]Although ambiguities are construed against the drafter, "a strict application should not trump the plain, clear language such that a strained or forced construction results." *Conrad v. Ace Property & Casualty Insurance Co.*, 532 F.3d 1000, 1005 (9th Cir. 2008) (quotations, ellipses and citation omitted).

Page 9 - OPINION AND ORDER

Next, the Court announced a bright line rule with respect to indemnification for the indemnitee's own negligence: The court must be *firmly convinced* that such an interpretation reflects the intention of the parties. *Id.* at 885 (emphasis added). "[I]f the United States expects to shift the ultimate responsibility for its negligence to its various contractors, the mutual intention of the parties to this effect should appear with clarity from the face of the contract." *Id.* Historically, courts have been reluctant "to cast the burden of negligent actions upon those who were not actually at fault." *Id.* This is especially relevant in cases where there exists a disparity in bargaining power and economic resources. *Id.* The Court expressly cited the example of "the United States and particular government contractors." *Id.*

The court notes the Cascade Contracts were awarded pursuant to a solicitation process in which the United States set the terms of the award. (Def.s' Trial Ex. 508, 509.) Moreover, the express terms of the contract do not convey with clarity a mutual intent of the parties to shift the burden of the United States' own negligence to Cascade. Unlike the cases relied upon by the United States, the indemnification provision does not include "hold harmless" language and, instead uses only the term "indemnifies." The term "hold harmless" means "to absolve (another party) from any responsibility for damage or other liability arising from the transaction." Black's Law Dictionary 800 (9th ed. 2009). The term "indemnify" means "to reimburse (another) for a loss suffered because of a third party's or one's own act or default." Black's Law Dictionary 837 (9th ed. 2009). Thus, while this court is aware of the Supreme Court's statement in *Seckinger* that neither "hold harmless" language nor an express extension of indemnification disclaimer is conclusive, the presence of either in a contract would provide evidence of a mutual intent of the parties to indemnify the United States for its own negligence.

Page 10 - OPINION AND ORDER

Additionally, there is no language that explicitly states the indemnification extends to injuries occasioned by the United States' own negligence. While an express term is not required under *Seckinger*, this court must be convinced that the terms of the clause allow for that clear interpretation. Here, the United States relies upon the "arising in whole or in part from the negligence . . . of [Cascade]" language as an explicit intention by the parties to encompass the United States' liability as well as Cascade's. The court cannot agree. The common sense interpretation of that term, when considered in the context of the entire provision, is that Cascade agreed to indemnify the United States for harm caused by Cascade's negligence even if Cascade was not the sole cause of the injury. In other words, Cascade would be liable for its harm even if it were only partially responsible.

Although the AIA indemnification clause contained the language "in whole or in part by any negligent act . . . of the Contractor" it also included a "hold harmless" term and an explicit statement that indemnification extended to acts of the indemnitee. Without something more, such as a hold harmless term or language to cover "any acts" or "any reason" or "damages of any kind," the United States' reliance here on the phrase "arising in whole or in part" falls short of encompassing the United States' own negligence. Moreover, the clause under consideration provides indemnity for "all claims" arising from the wrongful conduct of the contractor, not indemnity "for any and all claims." The "all claims" language in the Cascade Contracts means all claims attributable to Cascade and not "all claims" by whomever caused. *Compare Hollis*, 424 F.2d at 189 ("Contractor indemnifies and holds harmless the Government . . . against all suits" and indemnity provided "without limitation" for claims "of any kind whatsoever, resulting from . . . personal injury . . . occurring during the period of work on the vessel"); *Gibbs*, 599 F.2d

Page 11 - OPINION AND ORDER

at 40 ("save harmless clause" and explicit indemnification regardless of whether such claims may be attributable to the fault of the contractor); *Gillen* 825 F.2d at 1155-56 (clause included the express "hold harmless" language and explicitly stated indemnification will be required for "any loss" without limitation); *see also Smith v. United States*, 497 F.2d 500, 508 (5th Cir. 1974) ("The contractor shall assume all liability, and hold and save the government . . . harmless for any and all claims for personal injuries . . . or other claims arising out of or in connection with . . . the contract.")

Finally, there are two additional reasons that support the court's interpretation of the contract language in this case. First, comparative negligence has long been a principle of maritime law. *Northfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 815 (2001) ("a century ago the maritime law exchanged the common law's rule of contributory negligence for one of comparative negligence"); *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 409 (1953) (admiralty's comparative negligence rule barred application of state contributory negligence rule); *Socony-Vacuum Oil Co. v. Smith*, 305 U.S. 424, 431 (1939) ("Any rule of assumption of risk in admiralty, whatever its scope, must be applied in conjunction with the established admiralty doctrine of comparative negligence and in harmony with it."). The indemnification clause in the Cascade Contracts entitles the United States to recover from Cascade that portion of the judgment awarded to a plaintiff, as against the United States, that corresponds to Cascade's percentage of negligence contributing to a plaintiff's injuries. This provision then is in accordance with the maritime notion of comparative negligence/fault.

Second, under the particular circumstances of this case, the court is not convinced the parties intended to place the responsibility for the United States' negligent conduct on Cascade's

side of the ledger. Specifically, the court found the United States liable for an unsafe condition on the ESSAYONS, the existence of which predates both of the Cascade Contracts at issue. In addition, the United States created, maintained and controlled the hazard that injured Tucker. To shift the liability for this pre-existing condition onto the contractor is particularly onerous and, under the existing precedent, requires a clear and unequivocal expression of mutual intent. Moreover, the court's decision here comports with the Ninth Circuit's continued reluctance "to cast the burden of negligent actions upon those who were not actually at fault." *United States v. English*, 521 F.2d 63, 67 (9th Cir. 1975);[6] *United States v. Contract Management, Inc.*, 912 F.2d 1045, 1049 (9th Cir. 1990) ("We refuse to construe special paragraph 29 to give the government a benefit for which it did not expressly bargain, especially in light of our continued concern over the public policy ramifications of allowing the government to shift the burden of its negligent acts to its economically weaker contractors.").

The decision in *Seckinger* was issued over thirty years before the Cascade Contracts. Certainly, the United States, as the drafter of those Contracts, could have included more explicit terms to require indemnification for its own negligence. As in *Seckinger*, the court finds this intention was not "clearly and unequivocally" manifested in the indemnification clause of the Cascade Contracts. 397 U.S. at 215-16 (Court's decision preserves "the principle that indemnification for the indemnitee's own negligence must be clearly and unequivocally indicated

---

[6] In *United States v. English*, 521 F.2d 63 (9th Cir.1975), the Ninth Circuit held the government was not entitled to indemnification by the contractor for the government's negligent acts. *Id.* at 67. The provision at issue stated the contractor would be "responsible for all damages to person or property that occur as a result of his fault of (sic) negligence" and would " hold and save the government . . . free and harmless from liability of any nature occasioned by his operations." *Id.*

as the intention of the parties is preserved intact.") Accordingly, Cascade is responsible only for the harm it caused the United States and not for harm the United States imposed upon itself.

## *Conclusion*

Based upon the foregoing, the United States' request for Indemnification of the United States Pursuant to its Contracts with Cascade (doc. #364) is DENIED. Within 10 days, Tucker shall submit to the court an appropriate form of judgment in this matter.

IT IS SO ORDERED

DATED this 10th day of February, 2015

                                            JOHN V. ACOSTA
                                            United States Magistrate Judge